UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MARY E. WEBB,

               Plaintiff,

v.

**DECISION AND ORDER**
11-CV-192S

NIAGARA COUNTY, DEPARTMENT OF
MENTAL HEALTH,

               Defendant.

## I. INTRODUCTION

Plaintiff, Mary Webb, is a licensed clinical social worker currently employed by Defendant, Niagara County, New York. Webb alleges that her employer, Niagara County's Department of Mental Health, retaliated against her for filing discrimination charges with the New York State Division of Human Rights ("Human Rights Division"). She brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, as amended by the Civil Rights Act of 1991 ("Title VII"), and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* ("ADEA"). Presently before this Court is Niagara County's motion for summary judgment. For the following reasons, that motion is granted.

## II. BACKGROUND

**A. Facts**[1]

In 2002, Mary Webb began work with Niagara County as a staff social worker in its Department of Mental of Health ("DOMH"). (Def.'s State., ¶ 5; Docket No. 13-1.) The DOMH, which offers various treatment programs to residents of the County, has two locations: Niagara Falls, New York and Lockport, New York. (Id., ¶ 3.) Webb began in the Niagara Falls office, but was aware that her location could change depending on the needs of the patients. (Id., ¶ 9.) Further, as part of her duties as a staff social worker, she was required to be "on-call" in case of emergencies. (Id., ¶ 16.)

In 2005, Webb became the coordinator of the Rape Crisis Services program. Although she still served in other capacities, she allocated between 50 and 80 percent of her time this program. (Id., ¶ 15; Pl.'s State., ¶ 15; Docket No. 20-1.) As the coordinator, she was required to be on-call at all times. (Def.'s State., ¶ 16.) In March of 2009, however, Webb learned that Niagara County would be transferring the Rape Crisis Services program to another agency. (Id., ¶ 22.)

According to Michael White, the Deputy Director of the DOMH, he and Carol Ross, the Supervising Social Director at DOMH, evaluated the staffing needs at the two locations and determinated that there was a vacancy at the Lockport office. (Id., ¶¶ 24–26.) Although Webb disputes the motivation, White contends that due to this staffing situation, and because Webb's role as the coordinator of the Rape Crisis Services program was now

---

[1] This Court has accepted facts in each party's statement of undisputed facts (referred to as "Pl.'s State." and "Def.'s State." respectively) to the extent that they have not been controverted by the opposing party. See Local Rule 56(a)(2) (statements not specifically controverted are deemed admitted).

eliminated, he amended Webb's work schedule. She was now to work at the Lockport office three days per week, with the remaining days to be served at the Niagara Falls office. (Id., ¶¶ 27–29.)

At some point around this time, Webb did not receive a desired promotion.[2] This prompted her to file a complaint with the Human Rights Division on July 30, 2009. (Ex. 3 of Pl.'s Resp.; Docket No. 20-3.) Therein, she alleged that she was passed over for the promotion because of her age and race. (Id.) After the reassignment, Webb filed another complaint with the Human Rights Division. (Ex. 8 of Pl.'s Resp.; Docket No. 20-3.) This time, she alleged that her reassignment constituted a retaliation for her first complaint. (Id.) The Human Rights Division denied both claims. (Exs. F & H of Swift Aff.; Docket No. 13-5.)

Also after the reassignment, Webb was denied overtime (Def.'s State., ¶ 41), required to be on-call (Id., ¶ 39), assigned a new supervisor (Id., ¶ 45), and assigned to supervise another employee, Theresa Ackerman (Id., ¶ 44). Webb contends these acts were in response to her complaints with the Human Rights Division.

**B.      Procedural History**

Webb filed a complaint in this Court on March 7, 2011. (Docket No. 1.) On April 5, 2011, Niagara County filed its answer to Webb's complaint. (Docket No. 3.) After discovery, on May 18, 2012, Niagara County filed this motion for summary judgment. (Docket No. 13.) Briefing concluded on July 23, 2012, at which time this Court took the motion under advisement.

---

[2]The lack of promotion itself is not a subject of this lawsuit. Webb brings only retaliation claims.

## III. DISCUSSION

### A. Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" only if it "might affect the outcome of the suit under governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id. In determining whether a genuine dispute regarding a material fact exists, the evidence and the inferences drawn from the evidence "must be viewed in the light most favorable to the party opposing the motion." Adickes v. S. H. Kress & Co., 398 U.S. 144, 158–59, 90 S. Ct.1598, 1609, 26 L. Ed. 2d 142 (1970) (internal quotations and citation omitted).

"Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991) (citation omitted). Indeed, "[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82-83 (2d Cir. 2004) (citations omitted). The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

**B.     ADEA & Title VII**

A series of standards and definitions apply to claims of retaliation under Title VII and the ADEA. To begin, this Court must apply a modified version of the McDonnell Douglas burden-shifting test. See  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802,  93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); see also Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 106 (2d Cir. 2010) (holding that, even after the Supreme Court's decision in Gross v. FBL Financial Services, 557 U.S. 167, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009), the McDonnell Douglas burden-shifting framework continues to apply to ADEA claims). Under the test:

> First, the plaintiff must establish a *prima facie* case of retaliation. If the plaintiff succeeds, then a presumption of retaliation arises and the employer must articulate a legitimate, non-retaliatory reason for the action that the plaintiff alleges was retaliatory. If the employer succeeds at the second stage, then the presumption of retaliation dissipates and the plaintiff must show that retaliation was a substantial reason for the complained-of action.

Fincher v. Depository Trust & Clearing Corp., 604 F.3d 712, 720 (2d Cir. 2010) (citations omitted); see also Tepperwien v. Entergy Nuclear Operations, Inc., 663 F.3d 556, 568 n. 6 (2d Cir. 2011).

To meet the first prong of that test, *i.e.*, to establish a *prima facie* case:

> A plaintiff must adduce evidence sufficient to permit a rational trier of fact to find (1) that  he engaged in protected participation or opposition under Title VII or the ADEA, (2) that the employer was aware of this activity,(3) that the employer took [materially] adverse action against the plaintiff, and (4) that a causal connection exists between the protected activity and the adverse action, *i.e.*, that a retaliatory motive played a part in the adverse employment action.

Kessler v. Westchester Cnty. Dept. of Soc. Servs., 461 F.3d 199, 205-06 (2d Cir. 2006) (internal citations and modifications omitted); see also Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415, 165 L. Ed. 2d 345 (2006) (challenged action must be "materially adverse"). The plaintiff's burden of proof at this stage is minimal. Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000).

Last, the term "material adverse action," requires further refinement. The Supreme Court held that to meet this standard, the employer must have acted in such a manner as to "have dissuaded a reasonable employee [] from complaining of unlawful discrimination." Burlington, 548 U.S. at 68; see also Kessler, 461 F.3d at 209 (applying standard set by Burlington).

It is not entirely clear which of Niagara County's actions Webb considers to be materially adverse. Construed broadly, however, her submissions suggest that she was (1) assigned to a split shift; (2) denied overtime; (3) assigned to be on-call; (4) given an insufficient time to build a caseload for her new location; (5) assigned to supervise another employee; and (6) assigned to report to a new supervisor.

Most of Webb's complaints appear to revolve around her reassignment to the Lockport office for three days per week. According to Webb, this resulted in an increased workload for which overtime was not approved. She also objects to the transfer itself, which obviously inconvenienced her.

This transfer, however, cannot serve as a basis for a retaliation claim. According to White, the decision to reassign Webb to the Lockport office was made before Webb filed her first complaint with the Human Rights Division on July 30, 2009. (White Aff., ¶ 16; Docket No. 13-7.) Indeed, White wrote an email to Ross, who is Webb's supervisor,

detailing this suggestion on July 29, 2009 – the day before Webb filed the complaint. (Ex. D to White Aff; Docket No. 13-7.[3]) At the very least then, this move was being considered before Niagara County was aware of Webb's complaint. This fact contravenes Webb's argument that she was transferred because of her complaint. See Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 272, 121 S.Ct. 1508, 149 L. Ed. 2d 509 (2001) ("Employers need not suspend previously planned transfers upon discovering that a Title VII suit has been filed, and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality."). Without causality, Webb cannot establish a *prima facie* case and her claim must be dismissed.

Moreover, Niagara County's decision to transfer the Rape Crisis Services program to another agency, which resulted in the elimination of a majority of Webb's duties at the Niagara office, was made several months before Webb filed her complaint. (White Aff., ¶¶ 6,7.) White states that he notified Webb of this change in March of 2009, and Webb admits that she was aware of this change before she filed the complaint. (Webb Dep., at 66–68, attached as Ex. A to Swift Aff.; Docket Nos. 13-3, 13-4.) Niagara contends that the decision to transfer White to another location – which Niagara County was permitted to do under the terms of her employment – was made due to her reduced duties at the Niagara office, not in retaliation for her complaint. Considering the timeline of events, this serves as a particularly plausible non-discriminatory reason for the transfer. Webb must, but does not, overcome it. See e.g., Fincher, 604 F.3d at 720.

---

[3]That email reads, "Carol: in putting together Mary's assignment[,] I think the best split is 2 days per week in Niagara Falls (CVB 40%) and 3 days per week in Lockport Clinic (clinic 60%). [T]his avoids splitting a day between two sites.
What do you think and what days of the week in each area would you support[?]"

Indeed, there is no evidence, other than Webb's unfounded conjecture, that this transfer was motivated by retaliatory animus. Webb does not even argue as much in her opposing memorandum. Instead, without citation to the record and in the vaguest of terms, she asserts that the "record shows that Defendant's actions against the plaintiff . . . were taken, in whole or in part, in retaliation for the Plaintiff filing her Charges of Discrimination." (Pl.'s Mem. in Opp., at 16; Docket No. 20) (capitalization in original). This is plainly insufficient under the McDonnell Douglas test. See Weinstock, 224 F.3d at 42 (2d Cir. 2000) ("[T]he plaintiff must then come forward with evidence that the defendant's proffered, non-discriminatory reason is a mere pretext for actual discrimination. The plaintiff must produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not [retaliation] was the real reason for the employment action.").

Further, Webb's reliance on the temporal proximity between her reassignment and the filing of her discrimination complaint does not save her claim at this stage because "the temporal proximity of events may give rise to an inference of retaliation for the purposes of establishing a *prima facie* case of retaliation under Title VII, but without more, such temporal proximity is insufficient to satisfy [plaintiff's] burden to bring forward some evidence of pretext." El Sayed v. Hilton Hotels Corp., 627 F.3d 931, 933 (2d Cir. 2010). Accordingly, as it pertains to the transfer, her claim is dismissed.

****

As suggested above, Webb's fragmentary submissions make it difficult to discern precisely what actions she believes were taken as a result of her complaint to the Human Rights Division. Her assertion appears to be simply that she suffered several negative

consequences as a result of the transfer. As such, those consequences in themselves are not the basis of her retaliation claim: they are simply by-products of the transfer. But even if they could be separated from the transfer itself – so as to constitute discrete adverse actions – her claim would still fail.

Initially, Webb takes issue with the fact that she had to build a "caseload to be at a level that would enable to her to meet enough clients to met [sic] required Units of Service."[4] (Compl., ¶ 19; Docket No. 1.) She complains that she had only "four to five months" to build the caseload when "the normal time to build a caseload is six months." (Id.) But Webb raised this concern when she first learned of the transfer, and, at that time, White assured her that she would have sufficient time to build a caseload. (White Aff., ¶¶ 23-24; Exs. E & F to White Aff.) He further assured her that she could contact her supervisor if she needed help. (Id.) And White acted on these promises: he granted Webb a five-month respite from on-call duties while she made the transition to the Lockport office. (Id.) Webb concedes these facts. (Pl.'s State., ¶¶ 31, 37.) Simply put, this is not a materially adverse action.

Second, as a result of the alleged increased workload, Webb contends that she requested and was denied overtime. But Webb admits that she had complaints about her lack of approved overtime even before she filed her charge at the Human Rights Division. (Webb Dep. at 139; Pl.'s State., ¶¶ 40–41.) And she offers no evidence suggesting that the denials which occurred after her complaint were in any way different from the pre-complaint denials, or that they were somehow related to the Division of Human Rights

---

[4] Although the term "caseload" and the phrase "units of service" are not explained, this Court generally understands the allegation to be that Webb did not have enough time to complete the tasks necessary for her transition to Lockport.

complaint. Without evidence of such a causal connection, this claim must also fail. See Wright v. N.Y.C. Off-Track Betting Corp., No. 05 CIV. 9790 (WHP), 2008 WL 762196, at *5 (S.D.N.Y. Mar. 24, 2008) (citing Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 94-95 (2d Cir. 2001) ("If an employer's conduct before and after an employee complaint is consistent, the post-complaint conduct is not retaliatory."). In fact, Webb does not even offer any argument on this point in her memorandum. It will therefore be dismissed.

Webb's remaining complaints – that she was delegated to supervise another employee, given a new supervisor, and assigned on-call duties – also fail to withstand summary judgment.

First, although Webb apparently did not appreciate the increased responsibility of being put in a supervisory position, such an act cannot objectively be considered materially adverse; it is, rather, a favorable change in employment. See Tepperwien v. Entergy Nuclear Operations, Inc., 663 F.3d 556, 568 (2d Cir. 2011) ("Material adversity is to be determined objectively, based on the reactions of a reasonable employee."). Moreover, she does not complain, as might be expected, that this role required her to perform more work for the same (or less) pay; instead she objects to this assignment because Ackerman, the employee she was assigned to supervise, is a registered nurse and she is not. This difference apparently discomforted her. But Webb supervised Ackerman in Webb's field of expertise – mental health – not nursing. (Webb Dep., at 41-43.) Webb does not dispute this. (Pl.'s State., ¶¶ 42-44.) There is thus no evidence to support a finding that this assignment adversely affected her.

Neither can a mere change in the personnel assigned to supervise her, without more, be considered adverse – much less *materially* adverse. See, e.g., Burlington, 548

U.S. at 68 ("trivial harms," "petty slights," or "minor annoyances" are not materially adverse). Once again, despite being represented by counsel, Webb offers no argument explaining why such a change should be considered negative; instead she simply "notes" that her new supervisor has "less experience" and a "lesser license" than her former supervisor. (Pl.'s Mem. in Opp., at 9; Docket No. 20.)

Further, any claim that she was given on-call duties as a result of her Human Rights Division complaint is meritless. Yet again, while these allegations surface in her Complaint and at her deposition, her memorandum of law is silent on this issue. Even if not waived, there is no dispute that being on-call is a part, and has been a part, of her assigned duties since she was hired. (Webb Dep., at 60.) Accordingly, there can be no causal connection between this assignment and her Human Rights Division complaint. See Wright, 2008 WL 762196, at *5.

Finally, considering this perceived maltreatment in the aggregate does not save Webb's claim. As once pointedly declared by the Second Circuit, "Zero plus zero is zero." MacDraw v. CIT Grp. Equip. Fin., Inc., 138 F.3d 33, 38 (2d Cir.1998); see also Tepperwien, 663 F.3d at 572 (quoting MacDraw and finding "individually the actions were trivial, and placed in context they remain trivial. Taken in the aggregate, the actions still did not adversely affect [the plaintiff] in any material way").

## IV. CONCLUSION

Clearly frustrated by the reassignment to the Lockport office and the duties connected thereto, Mary Webb brings this claim asserting that her employer retaliated against her for filling charges of discrimination with the Human Rights Division. But this Court cannot act as a "super personnel department" that second guesses Niagara County's

business judgments. Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 103 (2d Cir. 2001) (quoting Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1330 (10th Cir. 1999)). Instead, Webb must connect a material adverse action to her complaint with the Division of Human Rights. Several of Webb's grievances cannot be considered materially adverse, and there is simply no connection between the actions about which she complains and the Human Rights Division complaint. Indeed, the decision to relocate her for three days per week, from which nearly every other grievance derives, was made *before* she even filed the complaint. For this and other reasons explained above, she has failed to meet the necessary standard under Title VII and the ADEA. Her claim will be dismissed.

## V. ORDERS

IT HEREBY IS ORDERED, that Defendant's Motion for Summary Judgment (Docket No. 13) is GRANTED, and the complaint is dismissed.

FURTHER, that the Clerk of the Court is directed to close this case.


Dated: November 10, 2012
       Buffalo, New York

                              /s/William M. Skretny
                              WILLIAM M. SKRETNY
                                   Chief Judge
                             United States District Court